UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEKSANDR MALYUTIN,<br><br>    Plaintiff,<br><br>    v.<br><br>CONDOLEEZZA RICE, *et al.*,<br><br>    Defendants. | Civil Action No. 11-1597 (CKK) |

MEMORANDUM OPINION
(April 13, 2012)

Plaintiff Aleksandr Malyutin, proceeding *pro se*, filed this action against (1) Condoleezza Rice, former Secretary of State; (2) Michael Chertoff, former Secretary of Homeland Security; (3) William Burns, former U.S. Ambassador to Russia; (4) Daniel Russell, former Deputy Chief of Mission at the U.S. Embassy in Moscow, Russia; (5) John Beyrle, former U.S. Ambassador to Russia;[1] and (6) Eric Rubin, former Deputy Chief of Mission at the U.S. Embassy in Moscow (collectively "Defendants"). Plaintiff alleges that since 2007, the Defendants have engaged in an ongoing conspiracy to harass and intimidate Plaintiff in order to deter him from pursuing a breach of contract action against a private company in New Jersey state court. Presently before the Court are Plaintiff's [11] Motion to Strike Notice of Appearance; Plaintiff's [12] Motion for Leave to Amend/Correct Civil Cover Sheet;[2] and Defendants' [13] Motion to Dismiss Plaintiff's

---

[1] At the time Plaintiff filed his Complaint, Defendant Beyrle was still in his post as U.S. Ambassador to Russia. In January 2012, Michael McFaul succeeded Defendant Beyrle as Ambassador. Biography of Michael A. McFaul, *available at* http://www.state.gov/r/pa/ei/biog/180421.htm.

[2] The descriptions of Docket Nos. [11] and [12] are inaccurate on the Court's docket. This Memorandum Opinion and accompanying Order uses the titles of the documents attached to

Complaint. For the reasons stated below, Plaintiff's Motion to Strike Notice of Appearance is DENIED, Plaintiff's Motion for Leave to Amend/Correct Civil Cover Sheet is GRANTED, and Defendants' Motion to Dismiss is GRANTED.

## I. BACKGROUND

*A.     Malyutin I*

Plaintiff originally filed suit against Defendants Rice, Burns, Russell, Kurt Amend (former Consul General for the U.S. Embassy in Moscow), and two Doe Defendants in January 2009. Plaintiff alleged the Defendants illegally denied his application for a visa to enter the United States and otherwise conspired to prevent Plaintiff from pursuing a breach of contract claim in state court in New Jersey. *Malyutin v. Rice*, No. 09-93 (D.D.C. Filed Jan. 15, 2009) ("*Malyutin I*"). Judge Emmett G. Sullivan dismissed the case for lack of subject matter jurisdiction, holding the doctrine of consular non-reviewability barred the Court from reviewing consular decisions regarding visas, and thus the Court lacked subject matter jurisdiction over Plaintiff's claims. *Id.*, Mem. Opin., ECF No. [37]. The Court of Appeals for the District of Columbia Circuit summarily affirmed the dismissal. *Id.*, Mandate of the U.S. Ct. of Appeals, ECF No. [46]. The Court incorporates Judge Sullivan's discussion of the factual allegations in *Malyutin I* herein. *Id.*, Mem. Opin. at 1-4.

*B.     Current Litigation*

In contrast to the detailed and precise allegations of Plaintiff's amended complaint in *Malyutin 1*, most of Plaintiff's seventy one page Complaint in this case is comprised of incomprehensible legalese and conclusory assertions. The Court does its best to distill the

---

the Docket entries.

limited *factual* allegations in the Complaint.  In essence, Plaintiff, a Russian national, proceeding *pro se*,

> [S]eeks judgment against Defendants,. . . for actual damages resulting from certain conspiratorial actions that Defendants, acting under color of federal law and being personally involved as direct participants in the activities alleged in this complaint, knowingly and deliberately took, each time with a class-based invidiously discriminatory animus behind their actions, through the meeting of the minds, in clear absence of any jurisdiction for taking such actions or performing such functions, against Plaintiff by interfering with, obstructing, and eventually defeating the due course of justice in state judicial proceedings . . ., violating Plaintiffs fundamental right of access to the state court . . ., obstructing a state court order and preventing Plaintiff from performing his duties under such order, endeavoring to destruct and eventually causing destruction of Plaintiff's material evidence in connection with, and altering the outcome of state judicial proceedings, whereby Plaintiff sustained injury in fact, was deprived of the equal protection of the laws and the equal privileges under the laws suffering class-based discrimination on account of Plaintiffs exercise of his fundamental and constitutional rights being a member of certain suspect and protected classes.

Compl. ¶ 5.  Plaintiff alleges he arrived in the United States in January 2007 and gave Defendants notice that he came to the United States to initiate a breach of contract action in New Jersey,[3] outlined his travel plans, and warned Defendants to preserve evidence relevant to claims Plaintiff might have against Defendants if they interfered with his lawsuit.  *Id.* at ¶ 37.  By "certain means," this written notice was personally delivered to Defendants Rice, Chertoff, Burns, and Russell.  *Id*.  After receiving this notice, Defendants reportedly "conspir[ed] among themselves for that matter [] to personally implement [sic] certain plan and pattern of conduct against Plaintiff in order to, *inter alia*, obstruct the course of justice in Plaintiff's state court litigation."  *Id.*  Defendants subsequently launched a pattern of conduct comprised of

- "ongoing harassment and putting pressure on and creation of a hostile and intimidating environment";

---

[3] *See Malyutin v. Aqua Prods. Inc.*, No. 569-07 (N.J. Sup. Ct. Filed Jan. 23, 2007).

3

- "verbal intimidation and threats of physical injury to Plaintiff personally";

- "preventing Plaintiff from performing his duties under [state court] orders," including "making Plaintiff miss certain deadlines" and "destruction of Plaintiff's material evidence";

- "bringing in new members of Defendants' conspiracy"; and

- "controlling Plaintiff's whereabouts and preventing Plaintiff from, and punishing Plaintiff" for attending state court and participating in "certain court-related matters."

*Id.* With few exceptions cited below, Plaintiff fails to provide any additional detail as to the specifics of this "conduct."

At some point, Plaintiff claims, Defendants Rice, Chertoff, Burns, and Russell personally contacted each other and exchanged information regarding the Plaintiff. Compl. ¶ 37 n.21. "Defendant Rice also advised the other Defendants, by certain means, that she planned to personally visit Moscow, Russia several times and that, therefore, she would be able to use such her visits [sic] to, *inter alia*, personally coordinate and further, by certain means, Defendants' conspiratorial actions against Plaintiff." *Id.* Defendants Rice and Chertoff then instructed "certain third parties" including employees of the State Department and Department of Homeland Security ("DHS") that "any incoming correspondence and/or communications from Plaintiff must be forwarded and delivered to Defendant Rice personally." *Id.* at ¶ 39. Defendants also had access to "certain records" in connection with Plaintiff's state court litigation and "used all such and certain other information to further their ongoing conspiracy." *Id.* at ¶ 40.

When Plaintiff left the United States in March 2007, "certain employees of the DHS," orally advised Plaintiff that "they had received certain instructions from the very top of the DHS

to act accordingly against Plaintiff, . . . that Plaintiff better give up his state court litigation . . ., and that it was touch and go if Plaintiff would be able to proceed any further with his pending state court litigation." Compl. ¶ 41. Plaintiff claims he was subsequently threatened by DHS employees, indicating "that his whereabouts were being controlled and that if he would fail to do what he had just been asked to do, then Plaintiff would be punished including physically, and that such punishment could happen to Plaintiff both in the US and overseas." *Id.* The "[s]ame situation and conversation" was repeated by unnamed officials in Moscow before Plaintiff boarded a United States bound plane in April 2007. *Id.* Upon arriving in the United States, Plaintiff was allegedly "interrogated with unconcealed hostility" by individuals "who advised Plaintiff that they had received certain instructions from the very top of DHS to act this way against Plaintiff," and repeated the previous threats made against Plaintiff regarding his participation in the New Jersey litigation. *Id.* at ¶ 43.

"Sometime before November 2007" the Defendants decided to make Plaintiff miss upcoming deadlines in the state court litigation. Compl. ¶ 53. As part of the conspiracy, Plaintiff claims Defendants "by certain means, [organized] a car accident in order to injure Plaintiff in his person and cause him bodily harm." *Id.* at ¶ 54. Plaintiff was "repeatedly struck with fear of ongoing intimidating and life threatening harassment which this time was severe enough to interfere with and alter the course of justice in Plaintiff's state court proceedings by, *inter alia,* making Plaintiff take a break from his ongoing discovery process." *Id.* Plaintiff returned home to Russia in November 2007. *Id.* at ¶ 56. Around that same time, Defendants decided to personally arrange for phone calls to be made to Plaintiff in Moscow, repeating the threats previously made against Plaintiff by DHS employees. *Id.* at ¶ 57. Defendants further

conspired to prevent Plaintiff "from escaping Defendants' control and sneaking into the United States through certain foreign countries." *Id.* at ¶ 60.  In December 2007, Plaintiff claims he contacted several foreign missions in Moscow, each of which advised Plaintiff that he would be harmed if he did not stay away from the missions.  *Id*. at ¶ 62.  Due to this "hostile, intimidating, and life threatening environment," Plaintiff missed his deposition for the state court litigation. *Id.* at ¶ 63. Over the course of the next several months, the Defendants reportedly perpetuated the conspiracy and "hostile environment" which eventually led to the dismissal of Plaintiff's state court case.  *Id*. at ¶ 67; *see Malyutin v. Aqua Prods. Inc.*, No. 569-07, Order of Dismissal (N.J. Sup. Ct. May 23, 2008).

The conspiracy apparently continued into the summer of 2008 despite the dismissal of Plaintiff's state court matter.  In August 2008, Plaintiff attempted to contact several unnamed diplomatic missions in Moscow, including the Mexican Mission which "direct him to stay away from the Mission, all in furtherance of Defendants' ongoing conspiracy against Plaintiff." Compl. ¶ 71.  The Defendants arranged for two additional threatening telephones calls to Plaintiff in Russia between August and September 2008.  *Id.* at ¶ 72.  The callers, purportedly State Department employees, once against informed Plaintiff they were calling on behalf of the Defendants, and repeated the threats against Plaintiff were he to pursue his now-dismissed state court case, and that "Plaintiff's physical punishment was not simply possible, but it was imminent and unavoidable."  *Id.*  By unstated means, as a "direct result of Defendants' ongoing and overwhelming conspiracy against Plaintiff," evidence related to the state court case was destroyed in October 2008.  *Id.* at ¶ 74.

When Defendants Beyrle and Rubin succeeded Defendants Burns and Russell,

Defendants Beyrle and Rubin purportedly joined the conspiracy and agreed to "personally make sure that a hostile environment for Plaintiff would continue to be maintained in Moscow." Compl. ¶ 76. In January 2009, when Defendants Rice and Chertoff left office, they allegedly destroyed "evidence which was relevant to the instant matter," while the remaining Defendants destroyed unspecified evidence at some later point prior to leaving their posts. *Id.* at ¶¶ 78, 80. In February 2009, Plaintiff delivered a "written legal warning letter" to the U.S. Embassy in Moscow, which led State Department employees to advise Plaintiff that he had never been barred from entering the United States, but would be continue to be barred from attending state court proceedings in the New Jersey case. *Id.* at ¶ 79. The threatening telephone calls continued in February 2009, and the Defendants decided to arrange further threatening calls and otherwise prevent Plaintiff from pursuing the federal case, *Malyutin I. Id.* From the end of 2009 through the beginning of 2010, Defendants yet again arranged for threatening phone calls to Plaintiff and "face-to-face threatening conversations" on the streets of Moscow, repeating the threats regarding the control over Plaintiff's behavior, and indicating Defendants destroyed relevant evidence upon leaving office. *Id.* at ¶ 83.

Plaintiff filed this action on August 25, 2011, listing eleven causes of action against the Defendants:  (1) Violation of Constitutional Rights (*Bivens* Claim); (2) Obstruction of State Court Order; (3) Obstruction of the Due Court of Justice in State Court; (4) Creation of Hostile and Intimidating Environment; (5) Destruction of Evidence Relevant to State Court Action; (6) Violation of New Jersey State Law (NJSA [§§] 2A:15-1, 30;4-24.1, etc); (7) Violation of the Second Clause of 42 U.S.C. § 1985(2); (8) Violation of 42 U.S.C. § 1986; (9) Negligent Spoliation of Evidence Relevant to This Action; (10) Intentional Infliction of Emotional

Distress; and (11) Negligent Infliction of Emotional Distress.  Compl. Pt. VII.

## II.  LEGAL STANDARD

*A.       Federal Rule of Civil Procedure 12(b)(1)*

"Federal courts are courts of limited jurisdiction" and can adjudicate only those cases entrusted to them by the Constitution or an Act of Congress.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Court begins with the presumption that it does not have subject matter jurisdiction over a case.  *Id.* at 377.  In order to survive a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction.  *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).  "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

B.     *Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) provides that a party may challenge the sufficiency of a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss for failure to state a claim, the district court must accept as true the well-pleaded factual allegations contained in the complaint. *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), cert. denied, 130 S. Ct. 2064 (2010). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Additionally, in deciding a Rule 12(b)(6) motion, a court may consider "'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,'" *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)), or "'documents upon which the plaintiff's complaint necessarily relies' even if the document is produced not by [the parties]," *id.* (quoting *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).

### III.  DISCUSSION

A.     *Plaintiff's Motion to Strike Notice of Appearance*

Plaintiff initially moves to strike the notice of appearance entered on behalf of Michael

Chertoff and Condoleezza Rice. Plaintiff contends that the Notice of Appearance, which indicates counsel is representing Defendants Chertoff and Rice in their official capacities only, is improper since all Defendants are being sued in their individual capacities only. Defendants state the initial Notice of Appearance was based on the ambiguity in the Complaint as to what claims were brought against the Defendants and in what capacity. Defs.' Reply at 8. Regardless, because the Court dismisses the case on jurisdictional and *res judicata* grounds, the Court need not resolve the issue of individual representation of the Defendants. Moreover, the notice does not pose any risk of prejudice to Plaintiff. Therefore, Plaintiff's [11] Motion to Strike Notice of Appearance is DENIED.

        B.        *Plaintiff's Motion for Leave to Amend/Correct Civil Cover Sheet*

Plaintiff also moves to correct the Civil Cover Sheet to reflect the proper basis for the Court's subject matter jurisdiction. The Court does not rely on the Civil Cover Sheet to determine its jurisdiction over a particular case, but nevertheless sees no reason to deny Plaintiff's request. Plaintiff's [12] Motion for Leave to Amend/Correct Civil Cover Sheet is GRANTED. The Clerk of Court will be instructed to docket the Corrected Civil Cover Sheet.

        C.        *Defendants' Motion to Dismiss*

Defendants move to dismiss the Complaint for a variety of reasons pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6). The Court only reaches two of these arguments: (1) that Plaintiff failed to properly serve Defendants Burns, Beyrle, Russell, and Rubin; and (2) the claims are barred by the doctrines of collateral estoppel and/or *res judicata*. Further, the Court finds Plaintiff's claims are patently insubstantial, therefore the Court lacks jurisdiction over the Complaint.

1.      Plaintiff Failed to Properly Serve Defendants Burns, Beyrle, Russell, and Rubin

Defendants argue the Complaint should be dismissed as to Defendants Burns, Beyrle, Russell, and Rubin because Plaintiff failed to properly serve these Defendants with process. Rule 4(i)(3) provides that

> To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

Rule 4(e) further provides that the employee must be served (1) according to state law; or (2) by delivering a copy of the summons to the employee personally, to the employee's usual place of abode, or the employee's authorized agent.

Plaintiff attempted to serve Defendants Rice, Burns, Russell, Beyrle, and Rubin by delivering copies of the summonses to the Office of the Legal Adviser for the Department of State. Return of Service/Affidavits, ECF No. [4]. Plaintiff's process server personally served Defendant Chertoff at his residence. Return of Service/Affidavits, ECF No. [6]. The parties agree that Plaintiff properly served Defendant Chertoff. The parties further agree that service of process as to Defendant Rice was proper since Defendant Rice authorized the Office of the Legal Adviser to accept service on her behalf. Defs.' Reply at 9. The parties disagree as to whether serving the Office of the Legal Adviser was sufficient service of process for the remaining Defendants, who have not authorized the Office of the Legal Adviser to accept service on their behalf.

Plaintiff contends federal regulations provide for service of process on the Office of the Legal Adviser for suits brought against former State Department in their personal capacities

only. Specifically, Plaintiff relies on 22 C.F.R. § 172.1(a)(1), which states

> This part sets forth the procedures to be followed with respect to: Service of summonses and complaints or other requests or demands directed to the Department of State (Department) or to any Department employee or former employee in connection with federal or state litigation arising out of or involving the performance of official activities of the Department.

Section 172.1(a)(1) does not itself state the proper procedures for serving State Department employees. Rather, § 172.2 outlines the procedure for service of summonses and complaints. This section indicates that, except as provided in regulations not applicable here, "the Department is *not* an authorized agent for service of process with respect to civil litigation against Department employees purely in their personal, non-official capacity." 22 C.F.R. § 172.2.(c) (emphasis added). As the regulation unambiguously provides, the Office of the Legal Adviser is not authorized to accept service of process for the remaining Defendants. Moreover, even though at least three of the remaining Defendants are still employed by the State Department, service at their place of employment is insufficient.[4] Rule 4(e); *Keller v. Embassy of the U.S.*, 522 F. Supp. 2d 213, 218-19 (D.D.C. 2007). Thus, Plaintiff has yet to properly serve the remaining Defendants.

Normally, once the Court determines service of process has not been properly accomplished, the Court would not proceed to evaluate the other grounds for dismissing the Complaint as to the Defendants not properly before the Court. *Simpkins v. District of Columbia*, 108 F.3d 366, 370 (D.C. Cir. 1997). However, where the Plaintiff has had a full and fair opportunity to contest the other grounds for dismissal, the Court has the power to dispose of the

---

[4] According to the State Department's website, Defendant Burns is currently the Deputy Secretary of State and Defendants Russell and Rubin serve as Deputy Assistant Secretaries of State.

case on the merits. *Id.* "[T]o permit [Plaintiff] to file another suit containing the same worthless claims would be inconsistent with the duty of the lower federal courts to stop insubstantial *Bivens* actions in their tracks and get rid of them." *Id.* Therefore, as explained below, the Court shall grant Defendants' motion to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) as to all Defendants.

> 2. Plaintiff's Claims Against Defendants Rice, Burns, and Russell for Conduct Prior to March 2009 are Barred by Res Judicata

Defendants argue that Plaintiff's claims are barred by the doctrines of collateral estoppel and/or *res judicata*. Acknowledging that use of the terminology relating to the preclusive effects of prior litigation is often inconsistent, for the sake of clarity, the Court will utilize the approach of the D.C. Circuit in *Dozier v. Ford Motor Co.*, 702 F.2d 1189 (D.C. Cir. 1983), and use "*res judicata*" as the umbrella term for preclusion, while specifically evaluating whether the doctrine of issue preclusion bars Plaintiff's claims. In order for issue preclusion to bar a claim, "(1), the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; (2), the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3), preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007).

Before Judge Sullivan, the parties briefed the issue of whether the doctrine of consular non-reviewability barred Plaintiff's claims. Plaintiff submits that pursuant to the doctrine of "curable defects," issue preclusion does not apply here. "In the District of Columbia Circuit, a prior dismissal for lack of subject matter jurisdiction precludes relitigation of the same jurisdictional issue in a later suit, unless the doctrine of "curable pleading defects" applies."

*Citizens Elec. Co., Ltd v. OSRAM GmBH*, 225 F. App'x 890, 893 (Fed. Cir. 2007) (citing *Dozier*, 702 F.2d at 1191). Plaintiff claims he cured the jurisdictional defect at issue in *Malyutin I* with allegations that he did not previously include. Plaintiff does not articulate the specific allegations that cured the defect, but attempts to excuse his prior failure to include the allegations claiming they (1) were irrelevant; (2) their relevance "could not be recognized by Plaintiff until after Defendants' conspiracy against him"; (3) that Plaintiff was afraid to include the allegations in his earlier suit; and/or (4) the events at issue did not occur until after the initial dismissal. Pl.'s Opp'n at 5.

Regardless of why he chose to withhold the allegations, Plaintiff cannot now rely on facts and events that Plaintiff knew of and occurred prior to the dismissal in *Malyutin I*. In this Circuit, a plaintiff cannot cure a jurisdictional defect by "relying upon [facts or occurrences] that existed at the time of the first dismissal." *Dozier*, 702 F.2d at 1192 n.5. Moreover, "[t]he 'curable defect' exception applies where a 'precondition requisite' to the court's proceeding with the original suit was not alleged or proven, and is supplied in the second suit." *Citizens Elec.*, 225 F. App'x at 893. In *Malyutin I*, Plaintiff essentially pled himself out of Court by seeking review of a consular decision. There is no "precondition requisite" that can be proven to cure the defect that led to the dismissal of Plaintiff's initial suit. Rather, in this new matter Plaintiff simply changed his story—in many ways contradicting his prior version of events—omitting any reference to his visa application. The Court is not required to provide Plaintiff an opportunity to revise the basis for his claims in order to avoid the effects of Judge Sullivan's dismissal. *Dozier*, 702 F.2d at 1192 ("It may be desirable (though not unquestionably so) to give a plaintiff multiple chances to comply with the[] post-transactional requirements; but it is quite another matter to

permit him to change his sworn recitation of past facts."). Plaintiff's attempts to cast the current Complaint as a different "issue" notwithstanding, Plaintiff could not and did not "cure" the jurisdictional defect in his prior complaint, barring relitigation of the Court's subject matter jurisdiction over his claims.

Judge Sullivan decided the issue of the Court's subject matter jurisdiction, a decision upheld by the D.C. Circuit on appeal. In his Opposition, Plaintiff attempts to argue that there is no preclusive effect of dismissals based on a lack of jurisdiction. To the contrary, the D.C. Circuit has explicitly and repeatedly noted that "the doctrine of res judicata applies to dismissal for lack of jurisdiction as well as for other grounds," and in this case, "that determination bars the present suit in federal district court." *Dozier*, 702 F.2d at 1191. Judge Sullivan's dismissal in *Malyutin I* satisfies the second requirement for a finding of issue preclusion.

Finally, the application of issue preclusion in this case comports with the basic principles of fairness. While the Court is conscious of Plaintiff's status as a *pro se* litigant, Judge Sullivan's ruling was not based on a jurisdictional requirement Plaintiff overlooked. Rather, Plaintiff's claims were and are fundamentally flawed in a way that no attorney could repair; it is the (alleged) facts, not the pleadings, that led to the dismissal in *Malyutin I*. Moreover, fairness dictates that the Defendants should not be subject to repeatedly responding to meritless claims.[5] Issue preclusion properly and fairly bars Plaintiff from relitigating Judge Sullivan's conclusion that the doctrine of consular non-reviewability denies the Court subject matter jurisdiction over

---

[5] The Defendants need not have been named in *Malyutin I* in order to invoke issue preclusion against the Plaintiff. *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983) (noting the Supreme Court abandoned the mutuality requirement for defensive issue preclusion in *Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 320-27 (1971)).

Plaintiff's claims.

### 3. Plaintiff's Claims are Patently Insubstantial

"A complaint may be dismissed on jurisdictional grounds when it 'is patently insubstantial, presenting no federal question suitable for decision.'" *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)). Numerous courts have dismissed as patently insubstantial complaints alleging the plaintiff was "subjected to a campaign of surveillance and harassment deriving from uncertain origins." *Id.* at 1010 (listing cases). In *Tooley*, the D.C. Circuit upheld the dismissal of claims alleging

> [A]bout a year and a half after a conversation with an airline representative the government launched a massive surveillance program against [plaintiff], involving wiretaps on at least nine phones, tracking devices on [plaintiff's] and his wife's cars, an officer stationed outside his house for a week or more, and other unspecified acts of surveillance, all continuing to this day, now seven years after the initial phone call.

*Id.* at 1009.

The allegations here are just as fanciful as in *Tooley*. Plaintiff alleges the secretary of state, secretary of homeland security, two United States Ambassadors, and two senior embassy officials personally conspired to prevent Plaintiff from pursuing a breach of contract case against a company with which the Defendants have no connection. As part of this alleged conspiracy, the Defendants went so far as to personally arrange a car accident in order to injure Plaintiff, intimidating multiple foreign consulates in Russia into refusing to help Plaintiff, and personally arranging for ongoing harassing phone calls to Plaintiff in his native country. Inexplicably, Plaintiff alleges he personally advised Defendants—*before* he even filed the New Jersey state court action—of (1) "an imminent non-frivolous litigation against them in case of, *inter alia,* Defendants' interference with his state judicial proceedings and discrimination against Plaintiff

on account of his membership in certain suspect classes"; (2) "asking Defendants to preserve for that matter certain relevant evidence"; and that (3) "raised certain issues of Defendants' immunities." Compl. ¶ 37.  In other words, before Plaintiff even attempted to enter the United States to file the case, he was convinced the Defendants would interfere with a simple breach of contract case between two private parties, and even brought with him "personally certain sensitive information that warranted Defendant Rice's, Defendant Chertoff s, Defendant Burns', and Defendant Russell's personal attention." *Id.*  Then, over the course of four years, the Defendants personally spoke with each other and arranged for countless officials in the United States and Russia to harass and intimidate Plaintiff, instructing these officials to *inform* Plaintiff exactly who was conspiring against him.  The Defendants' alleged level of fanaticism and personal involvement with no apparent motivation "move[s] these allegations into the realm of claims 'flimsier than doubtful or questionable— . . . [to] essentially fictitious." *Id.* at 1009 (quoting *Best*, 39 F.3d at 330).  The Court lacks jurisdiction to further consider such patently insubstantial claims.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds Plaintiff's Complaint must be dismissed. Plaintiff failed to properly serve Defendants Burns, Russell, Beyrle, and Rubin.  Even if Plaintiff had properly served all Defendants, the claims against Defendants Rice, Burns, and Russell for conducting occurring before March 2009 are barred by *res judicata*.  Ultimately all of Plaintiff's claims are patently insubstantial, therefore the Court lacks jurisdiction to further proceed in this matter.  Plaintiff's [11] Motion to Strike Notice of Appearance is DENIED, Plaintiff's [12] Motion for Leave to Amend/Correct Civil Cover Sheet is GRANTED, and Defendants' [13]

Motion to Dismiss is GRANTED.

An appropriate Order accompanies this Memorandum Opinion.

/s/
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE